No. 24-13539-CC

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

**UNITED STATES OF AMERICA**,
Appellee,

v.

**DAMARIOUS BROWN**,
Appellant.

On appeal from the United States District Court
for the Northern District of Georgia

**BRIEF OF APPELLANT
DAMARIOUS BROWN**

SEAN J. YOUNG
REBECCA SHEPARD
Federal Defender Program, Inc.
101 Marietta Street, NW, Suite 1500
Atlanta, GA 30303
(404) 688-7530
Sean_Young@FD.org

Counsel for Damarious Brown

No. 24-13539-CC
United States v. Damarious Brown

**CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT**

Pursuant to 11th Cir. R. 26.1-2(a), counsel certifies that the following have an interest in the outcome of this appeal:

Brown, Damarious, Appellant

Buchanan, Ryan K., Former United States Attorney

Cannon, Hon. Regina D., United States Magistrate Judge

Cooper, Natasha S., Assistant United States Attorney

Dunn, Mildred G., Former Interim Executive Director, Federal Defender Program

Geraghty, Hon. Sarah E., United States District Judge

Kearns, Stephanie A., Former Executive Director, Federal Defender Program

McBath, Hon. J. Elizabeth, United States Magistrate Judge

Moultrie, Jr., Richard S., Acting United States Attorney

Pak, Byung J., Former United States Attorney

Palumbo, Amy M., Assistant United States Attorney

Perdew Silas, V. Natasha, Executive Director, Federal Defender Program

Salinas, Hon. Catherine M., United States Magistrate Judge

Shepard, Rebecca, Attorney for Appellant

C-1 of 2

No. 24-13539-C
United States v. Damarious Brown

**CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT**

Sommerfeld, Lawrence R., Assistant United States Attorney

United States of America, Appellee

Vineyard, Hon. Russell G., United States Magistrate Judge

Walker, Hon. Linda T., United States Magistrate Judge

Young, Sean J., Attorney for Appellant

No publicly traded company or corporation has an interest in the outcome of this case or of this appeal.

C-2 of 2

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument is necessary to clarify a legal issue that the district court found to be "trick[y]" and "difficult" (Doc. 171 at 118:5, 129:9): Does an out-of-court, non-hearsay statement become inadmissible if the declarant happens to be a criminal defendant who does not testify at trial? The district court found "some ambiguity or conflict" in applicable circuit precedent, and it found discussion of the issue in one precedential case to be "perfunctory." (*Id.* at 118:15-18). The district court resorted to relying on unpublished decisions (without independently assessing their persuasiveness), as well as "the government's policy argument[s]." (*Id.* at 131:9-12). The district court issued its ruling "with some humility and recognition that the appellate court may see it differently." (*Id.* at 131:19-21). Nothing in the Federal Rules of Evidence says that an otherwise admissible statement becomes inadmissible when the declarant is a criminal defendant who does not testify at trial.

Given the district court's significant doubts about the correctness of its ruling and about the meaning of Eleventh Circuit precedent, and to ensure that clear guidance is provided to district courts in the future on this issue, oral argument is necessary.

i

**TABLE OF CONTENTS**

Certificate of Interested Persons and Corporate Disclosure Statement..... C-1

Statement Regarding Oral Argument.................................................................. i

Table of Citations ..............................................................................................iv

Statement of Jurisdiction...................................................................................1

Statement of the Issues .....................................................................................2

Statement of the Case .......................................................................................4

    A.    Procedural History.................................................................................4

    B.    Factual Background. ..............................................................................4

        1.    The government's witness concerning Mr. Brown's subjective knowledge of felony status. ...............................5

        2.    The defense's main witness concerning Mr. Brown's subjective knowledge of felony status. ...............................8

        3.    Other documents relied on by each party as evidence of Mr. Brown's subjective knowledge................10

        4.    The excluded August 3, 2023 telephone call......................14

        5.    The district court's ruling on the August 3, 2023, telephone call ................................................................17

        6.    The jury's questions about Mr. Brown's knowledge........20

        7.    Sentencing .........................................................................21

        8.    Motions for a judgment of acquittal under the Second Amendment ............................................................23

    C.    Standard of Review................................................................................24

Summary of the Argument.................................................................................25

Argument and Citation of Authority ................................................................ 27

I.    Mr. Brown's Conviction Should be Reversed Because the
      District Court Incorrectly Believed that All Out-Of-Court
      Statements by a Non-Testifying Criminal Defendant Must be
      Excluded. ............................................................................................ 27

      A.    *United States v. Parry* demonstrates that the statements
            should have been admitted with a limiting instruction. ............ 29

      B.    Subsequent Eleventh Circuit precedent did not create a
            non-testifying-criminal-defendant exception to the
            Federal Rules of Evidence. ........................................................ 32

      C.    Nothing in the text of the Federal Rules of Evidence
            supports the district court's ruling. ........................................... 35

II.   The District Court Procedurally Erred at Sentencing by Failing
      to Appreciate Its Discretion to Vary Downward Under
      *Kimbrough*. ........................................................................................ 41

III.  Section 922(g)(1) is Unconstitutional Both Facially and As
      Applied to Mr. Brown. ........................................................................ 43

Conclusion ...................................................................................................... 48

Certificate of Compliance and Service ............................................................ 49

iii

# TABLE OF CITATIONS

**Federal Cases**

*Bonner v. City of Pritchard*,
    661 F.2d 1206 (11th Cir. 1981) ...................................................................25

*District of Columbia v. Heller*,
    554 U.S. 570 (2008) ...................................................................................45

*Edwards v. Prime, Inc.*,
    602 F.3d 1276 (11th Cir. 2010) .................................................................46

*Finn v. Cobb Cnty. Bd. Of Elec. And Registration*,
    111 F.4th 1312 (11th Cir. 2024) ................................................................34

*Gall v. United States*,
    552 U.S. 38 (2007) ................................................................................2, 24

*Huggins v. Leueder, Larkin & Hunter, LLC*,
    39 F.4th 1342 (11th Cir. 2022) ..................................................................35

*\*Kimbrough v. United States*,
    552 U.S. 85 (2007) ............................................................................ passim

*N.Y. State Rifle & Pistol Assoc., Inc. v. Bruen*,
    597 U.S. 1 (2022) ...........................................................................26, 44, 45

*Rehaif v. United States*,
    588 U.S. 225 (2019) ....................................................................................4

*Suarez v. Paris*,
    2024 WL 3521517 (M.D. Pa. 2024) ..........................................................46

*United States v. Arbolaez*,
    450 F.3d 1283 (11th Cir. 2006) .................................................................34

*United States v. Archer*,
    531 F.3d 1347 (11th Cir. 2008) .................................................................44

*United States v. Baldon*,
    2024 WL 3459017 (D. Nev. 2024) ............................................................46

*United States v. Bullock*,
    679 F. Supp. 3d 501 (S.D. Miss. 2023) .....................................................45

*United States v. Calderon*,
   1314 F.3d 1186 (11th Cir. 1997) ................................................................41

*United States v. Cunningham*,
   194 F.3d 1186 (11th Cir. 1999) ................................................17, 32, 33, 34

*United States v. DiFalco*,
   837 F.3d 1207 (11th Cir. 2016) ................................................................44

*United States v. Frediani*,
   790 F.3d 1196 (11th Cir. 2015) ................................................................38

*United States v. Henderson*,
   649 F.3d 955 (11th Cir. 2011) ................................................................43

*United States v. Irey*,
   612 F.3d 1160 (11th Cir. 2010) ................................................22, 25, 41, 42

*United States v. Jackson*,
   55 F.4th 846 (11th Cir. 2022) ................................................................43

*United States v. Jimenez-Shilon*,
   34 F.4th 1042 (11th Cir. 2022) ................................................................47

*United States v. Kaley*,
   579 F.3d 1246 (11th Cir. 2009) ................................................................46

*United States v. Macrina*,
   109 F.4th 1341 (11th Cir. 2024) ................................................................33, 34

*United States v. Martin*,
   803 F.3d 581 (11th Cir. 2015) ................................................................24

*United States v. Morales*,
   2024 WL 3345982 (S.D.N.Y. 2024) ................................................................46

*United States v. Parry*,
   649 F.2d 292 (5th Cir. 1981) ................................................................ passim

*United States v. Rahimi*,
   602 U.S. 680 (2024)................................................................ passim

*United States v. Rozier*,
   598 F.3d 768 (11th Cir. 2010) ................................................................ passim

*United States v. Stone*,
   575 F.3d 83 (1st Cir. 2009)................................................................43

v

*United States v. Tutty,*
    612 F.3d 128 (2d Cir. 2010) ........................................................43

*United States v. Vernon,*
    593 Fed. Appx. 883 (11th Cir. 2014) ..........................................18

*United States v. Williams,*
    865 F.3d 1328 (11th Cir. 2017) ..............................................24, 28

*United States v. Willis,*
    759 F.2d 1386 (11th Cir. 1985) ........................................... passim

*Ysleta Del Sur Pueblo v. Texas,*
    142 S. Ct. 1929 (2022) ................................................................40

**Federal Statutes & Rules**

18 U.S.C. § 922(g).........................................................................4, 23

18 U.S.C. § 3231...............................................................................1

18 U.S.C. § 3500.............................................................................37

18 U.S.C. § 3553(a) ..............................................................2, 22, 23

18 U.S.C. § 3742...............................................................................1

28 U.S.C. § 1291...............................................................................1

FED. R. APP. P. 4...............................................................................1

FED. R. APP. P. 32.............................................................................49

FED. R. EVID. 101(b)(2) ...................................................................38

FED. R. EVID. 104(c), (d) .................................................................36

FED. R. EVID. 106.............................................................................39

FED. R. EVID. 201(f)..........................................................................37

FED. R. EVID. 414(a) .........................................................................37

FED. R. EVID. 501.............................................................................38

FED. R. EVID. 601.............................................................................38

FED. R. EVID. 609(a)(1)(A), (a)(1)(B) ..................................................................36

FED. R. EVID. 612(b), (c) ...............................................................................37, 38

FED. R. EVID. 806(6)(E), (8)(B) .............................................................................40

FED. R. EVID. 803(8)(A)(ii), (8)(A)(iii) ...................................................................36

FED. R. EVID. 803(10)(B), (22)(D) ...................................................................36, 37

FED. R. EVID. 804(b)(3)(B) .....................................................................................37

FED. R. EVID. 806 ....................................................................................................39

U.S.S.G. § 2K2.1 .........................................................................................2, 21, 41

## State Statutes & Rules

O.C.G.A § 42-8-60 .............................................................................................5, 10

## Additional Authority

ANTONIN SCALIA & BRYAN A. GARNER,
Reading Law: The Interpretation of Legal Texts (2012) ...................................38

\*   Pursuant to 11th Cir. R. 28-1(e), Mr. Brown notes that he primarily relies upon these citations.

No. 24-13539-CC

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

**UNITED STATES OF AMERICA**,
Appellee,

v.

**DAMARIOUS BROWN**,
Appellant.

**STATEMENT OF JURISDICTION**

The district court had jurisdiction over this case under 18 U.S.C. § 3231 because an indictment was filed charging Mr. Brown with one or federal crimes. This is a direct appeal from an order and judgment of the district court; the Court of Appeals has jurisdiction over this appeal under 18 U.S.C. § 3742 and 28 U.S.C. § 1291. Mr. Brown filed the notice of appeal on October 25, 2024, within 14 days of the entry of the district court's judgment and commitment order. FED. R. APP. P. 4(b)(1)(A). This appeal is from a final order of the district court that disposes of all the parties' claims in this case.

## STATEMENT OF THE ISSUES

I.    The district court believed that Eleventh Circuit precedent required it to exclude Mr. Brown's out-of-court, non-hearsay statement because he did not testify at trial. No Federal Rule of Evidence requires this. Did the district court legally err, thus committing an abuse of discretion *per se*, when it excluded Mr. Brown's August 3, 2023, statements based on this interpretation of precedent?

II.    Supreme Court and Eleventh Circuit precedent permit a district court to vary downward based on a policy disagreement with the Sentencing Guidelines. *See Kimbrough v. United States*, 552 U.S. 85, 101 (2007); *United States v. Irey*, 612 F.3d 1160, 1212 (11th Cir. 2010) (en banc). Section 2K2.1(b)(4)(A) of the Guidelines increased Mr. Brown's offense level by two points because the firearm was stolen. Mr. Brown argued, pursuant to 18 U.S.C. § 3553(a), that the district court should downward vary by two levels because it was bad policy for this Guideline to apply to him when he did not know the firearm was stolen. The district court believed that the Eleventh Circuit prohibited it from doing so, though it is unclear what Eleventh Circuit case the district court was referring to. Did the district court commit procedural error in believing that the Eleventh Circuit prohibited it from varying downward in this case, when Eleventh Circuit precedent, *see, e.g.*, *Irey*, says the exact opposite?

III.    Did the district court legally err by rejecting Mr. Brown's facial and as-applied Second Amendment challenge in this felon-in-possession

3

case on the basis of Eleventh Circuit precedent, when such precedent had

later been undermined to the point of abrogation by the Supreme Court?

**STATEMENT OF THE CASE**

**A.    Procedural History.**

Defendant Damarious Brown was charged with possessing a firearm on or about April 23 and April 24, 2021, after having been convicted of a crime punishable by imprisonment of more than one year (i.e., a felony) on November 8, 2017, in violation of 18 U.S.C. § 922(g)(1). (Docs. 1, 67). Mr. Brown maintained his plea of not guilty and proceeded to trial.

Following a five-day jury trial, he was found guilty on January 26, 2024. (Doc. 113). On October 15, 2024, the district court held a sentencing hearing and imposed a custodial sentence of 86 months, to be followed by 3 years of supervised release. (Doc. 149). Mr. Brown timely filed his notice of appeal on October 25, 2024. (Doc. 155). Mr. Brown is in custody, serving his sentence on this conviction.

**B.    Factual Background.**

At trial, there was no dispute that Mr. Brown was convicted of a felony on November 8, 2017. But Mr. Brown's central defense was that he did not *know* that he had a felony conviction on his record at the time of the offense in April 2021.[1] (*See* Doc. 172 at 49:2-3 ("Damarious Brown is

---

[1] Under *United States v. Rehaif*, 588 U.S. 225, 237 (2019), the government must prove that the defendant knew that he had previously been convicted of a crime that carried a potential imprisonment sentence of over a year in order to be found guilty of violating 18 U.S.C. § 922(g)(1). In the proceedings below, the parties and the district court generally used the shorthand "convicted felon" to capture this requirement, and this brief will do so as well for simplicity.

4

innocent because he didn't know that he was a convicted felon.")). Instead, the defense asserted that Mr. Brown subjectively believed that he had been sentenced under Georgia's First Offender Act, O.C.G.A. § 42-8-60, and that his First Offender status was never revoked, thus resulting in no felony conviction on his record. (*Id.* at 49:4-7). (The parties agreed that that is how the First Offender law works when it does apply.[2]) In short, the defense conceded that Mr. Brown had been convicted of a felony but argued that Mr. Brown subjectively thought, erroneously, that he was a First Offender.

Each side presented one main witness going to this knowledge element: the government called Jennifer Brooks, the Assistant District Attorney ("ADA") who was present when Mr. Brown pled guilty to certain felonies on November 8, 2017, in Dekalb County Superior Court. (Doc. 171 at 30:5-16). The defense called Kendra Brown, the probation officer who met with Mr. Brown a week after he entered his plea, on November 15, 2017. (*Id.* at 146:19). In addition, each side relied on certain documents from Mr. Brown's criminal proceedings to support their case.

### 1.     The government's witness concerning Mr. Brown's subjective knowledge of felony status.

ADA Brooks explained that, during the prior state plea hearing, Mr. Brown was told that he was being charged with possessing cocaine and possessing a firearm during the commission of a felony. (Doc. 171 at 32:6-

---

[2] The operation of the First Offender Act was explained in a jury instruction, to which neither party objected. (*See* Doc. 172 at 29:22-30:12).

17). Specifically, Mr. Brown was pleading guilty to charges listed in two separate state indictments, 15CR4138 (possessing cocaine) (Doc. 121-13), and 16CR2472 (possessing cocaine and possessing a firearm during the commission of a felony) (Doc. 121-14), in a single plea hearing. The plea transcript from that hearing was admitted into evidence (*see* Doc. 121-15), and the government had ADA Brooks walk the jurors through various portions of the plea transcript, as described below.

Before he pled guilty in the prior state proceeding, Mr. Brown's defense lawyer told the judge that Mr. Brown "is actually not a convicted felon," that this would be his "first felony conviction," and that this was explained to Mr. Brown. (Doc. 171 at 35:2-11; 35:20-36:1). Then, ADA Brooks proceeded to ask Mr. Brown a series of pre-scripted, mostly yes-or-no questions going to whether Mr. Brown understood that his plea was knowing and voluntary. (*Id.* at 38:5-39:6). ADA Brooks recorded each of his answers on what she called a "plea transcript form" (*id.*), which was admitted into evidence. (*See* Doc. 121-13 at 5-7; Doc. 121-14 at 5-7). The questions included whether Mr. Brown understood what rights he was waiving and whether he was in the right state of mind, to which he answered yes. (*See* Doc. 171 at 41:2-49:17). Mr. Brown initially had some questions for his attorney and spoke to her. (*Id.* at 41:15-20). He then confirmed he was satisfied with his attorney. (*Id.* at 46:17-20).

Next, Mr. Brown was told that if he pled guilty, "the Court has indicated that it's going to sentence you to three years probation to serve 12

6

months in custody," where the 12 months of custody would be reduced to time served. (*Id.* at 47:18-21). With respect to case 15CR4138, Mr. Brown was asked if he understood that those charges carried a maximum sentence of three years to serve. At first, he said he did not understand, but then he said he did. (*Id.* at 48:7-50:7). With respect to case 16CR2472, Mr. Brown said he understood that the maximum sentence for those charges was eight years to serve. (*Id.* at 50:9-51:5).

Mr. Brown then pled guilty to the counts in both indictments. (Doc. 171 at 51:10-52:1). Mr. Brown confirmed that he had reviewed and signed the "charging documents" (i.e., the indictments) (Doc. 121-13 at 8; Doc. 121-14 at 8), and that he had reviewed them with his attorney. (Doc. 171 at 52:9-53:19). The charging documents with his signature both indicated that he "pleads GUILTY." (Doc. 121-13 at 8; Doc. 121-14 at 8). He also signed the plea transcript form[3] on which ADA Brooks recorded his answers to her scripted plea questions. (Doc. 171 at 53:21-25; Doc. 121-13 at 6; Doc. 121-14 at 6). The judge then found, "I understand that the plea to the charges against you are freely, voluntarily, knowingly and intelligently entered and there is a factual basis for your plea," and sentenced Mr. Brown to "three to serve 12 and 12 in custody is reduced to time served." (Doc. 171 at 54:13-

---

[3] At this point, ADA Brooks referred to this as "guilty plea transcripts" (Doc. 171 at 53:21-22) but it is clear in context she is referring to the "plea transcript form" she referenced earlier.

20). ADA Brooks explained that this meant time served plus three years of probation. (*Id.* at 54:17-55:5).

ADA Brooks added that there was no mention of First Offender during the plea colloquy that day. (Doc. 171 at 103:6-8). She also testified that "defense attorneys have a duty to explain to their clients any plea disposition." (*Id.* at 104:5-15). She confirmed that a defendant cannot "receive first offender without a judge ordering it." (*Id.* at 104:22-24).

To rebut the government's suggestion that Mr. Brown knew he was a convicted felon, the defense elicited the following admissions from ADA Brooks. She confirmed that a defendant can plead guilty to a felony, even multiple felonies, and still be sentenced under the First Offender Act. (Doc. 171 at 66:1-6; 66:10-13). She confirmed that a defendant can be sentenced to time in prison and still be under a First Offender sentence. (*Id.* at 70:12-15). She additionally confirmed that the judge never told Mr. Brown that he was being "convicted" of a felony. (*Id.* at 92:10-14). She acknowledged that the judge never said that Mr. Brown was being "adjudged guilty" or that he was imposing an "adjudication of guilty" (*id.* at 92:10-17). She later explained that "adjudication of guilt" is the legal trigger that results in a felony conviction. (*Id.* at 70:1-5 (Q: "And when you get an adjudication of guilt for a felony, that is a felony conviction; correct? A: That's correct.")).

**2.      The defense's main witness concerning Mr. Brown's subjective knowledge of felony status.**

Probation Officer Brown confirmed that when she met with Mr. Brown a week after his guilty plea and sentence, she presented Mr. Brown

with a document entitled, "Department of Community Supervision Offender Firearms Acknowledgment," which explained to the probationer that they were not allowed to possess firearms. (Doc. 171 at 151:3-8). The form led with the following language at the top of the document, and the following language was singled out in underline: "<u>I am currently serving a sentence imposed under First Offender Act for a felony offense</u>":



I acknowledge that I have read, or had read to me, and understand that:

   (a) I have been convicted of a felony offense, or

   (b) <u>I am currently serving a sentence imposed under First Offender Act for a felony offense</u>, or

   (c) I have been convicted of a misdemeanor crime of domestic violence

(*See* Doc. 127-7; Doc. 171 at 151:3-8). Officer Brown confirmed that she signed it. (*Id.* at 171:13-15). She also confirmed that Mr. Brown signed it. (*Id.* at 171:16-18):

(*See* Doc. 127-7).

    On cross examination of Officer Brown, the government elicited testimony that this form—including the underlined portion—was a standard, preprinted form that is used for everyone, whether they were First Offenders or convicted felons. (Doc. 171 at 157:23-171:9). But on redirect, Officer Brown confirmed that she did not tell probationers that the

form they were signing was the same form used for all probationers, regardless of their felony status. (*Id.* at 160:8-11). The government did not introduce any other document provided to Mr. Brown after this date that disabused him of any belief that he was a First Offender.

    **3.    Other documents relied on by each party as evidence of Mr. Brown's subjective knowledge.**

Each party also relied on portions of other documents from Mr. Brown's state criminal proceedings as evidence of Mr. Brown's subjective knowledge. First, the final disposition documents from both prior state cases (15CR4138 and 16CR2472) were introduced into evidence by the government. (Docs. 121-13 at 1-4, 121-14 at 1-4). Both final disposition documents had the phrase, "Final Disposition Felony Sentence with Probation" at the top of the page. (Doc. 121-13 at 1; Doc. 121-14 at 1). Both documents also had the phrase, "First Offender / Conditional charge entered under" with a checkbox next to "O.C.G.A. § 42-8-60," which is the First Offender statute, but the checkbox was left blank on both forms:

> **First Offender/Conditional Discharge entered under:**
> [ ]  O.C.G.A. § 42-8-60   [ ]  O.C.G.A. § 16-13-2

(*See id.*).

The defense pointed out, however, that Mr. Brown never saw these final disposition documents. These documents had a signature line for the defendant which acknowledged, "I have read the terms of this sentence or had them read and explained to me." (*See* Doc. 121-13 at 4; Doc.121-14 at 4). But it was left blank on both final disposition documents:

> **Acknowledgment:** I have read the terms of this sentence or had them read and explained to me. If all or any part of this sentence is probated I certify that I understand the meaning of the order of probation and the conditions of probation. I understand that violation of a special condition of probation could result in revocation of all time remaining on the period of probation.
>
>                                                                 _____
>                                                                                 **Defendant**

(*See id.*). The defense also pointed out that even if Mr. Brown had seen the final disposition documents, they themselves created doubts about whether he was convicted of a felony or whether he was sentenced under the First Offender Act. On the first page of each final disposition document was the following language: "The Defendant is adjudged guilty *or* sentenced under First Offender/Conditional Discharge for the above-stated offense(s) . . . ." (emphasis added):

> The Defendant is adjudged guilty or sentenced under First Offender/Conditional Discharge for the above-stated offense(s); the Court sentences the Defendant to confinement in such institution as the Commissioner of the State Department of Corrections may direct, with the period of confinement to be computed as provided by law.

(*See* Doc. 121-13 at 1; Doc. 121-14 at 1). The defense argued that it was unclear from the document whether the defendant was "adjudged guilty" or "sentenced under First Offender." (Doc. 172 at 57:4-10).

11

Second, the government pointed out that the plea transcript forms from both cases, which were signed by Mr. Brown, contained several questions related to First Offender status, and those questions were left blank. (*See* Doc. 121-13 at 6; Doc. 121-14 at 6). For example, in response to "Has your lawyer informed you of the First Offender Act and/or the Provision for Conditional Discharge?", the "Ans." blank remained blank:

**FIRST OFFENDER / CONDITIONAL DISCHARGE INFORMATION**

(29) Has your lawyer informed you of the First Offender Act and/or the Provision for Conditional Discharge? Ans. _____

(30) Do you understand that the Court decides whether to sentence under the First Offender Act or the Conditional Discharge Statute (OCGA 16-13-2)? Ans. _____

(31) Do you believe that you qualify to be sentenced under [the First Offender Act]/ [the Conditional Discharge Statute]? Ans. _____

(*Id.*). One could also infer from the blanks, however, that Mr. Brown's attorney never explained to him how he could tell the difference between a felony conviction and a First Offender sentence.

In addition, ADA Brooks confirmed she was the one who handwrote the answers to the plea transcript form's yes or no questions, not Mr. Brown. (Doc. 171 at 38:5-39:6). For example, ADA Brooks filled in the following blanks, not Mr. Brown:

(23) How do you plead to the charge, guilty or not guilty? Ans. __GUILTY__

(24) Are you in fact guilty [or Are you guilty under *Alford v. North Carolina*]? Ans. __YES__

(Doc. 121-13 at 6). ADA Brooks further acknowledged that none of the questions in the plea transcript form "specifically ask him if he understands that he is going to have a felony conviction." (Doc. 171 at 91:18-21; *see also* Doc. 121-13 at 5-6; Doc. 121-14 at 5-6). Nor did any of the pre-scripted questions ask if the defendant understood that he was going to have a felony conviction on his record. (Doc. 171 at 91:22-25). In addition, the defense pointed out that Mr. Brown's own defense attorney in the state proceedings did not sign the "plea transcript form" associated with the 16CR2472 case. (*See* Doc. 172 at 59:23-60:9 ("Defense lawyer isn't signing half the forms. No one cares if he's seeing anything.")).

I hereby certify that the above questions were asked the defendant and the answers were given by the defendant in my presence.

ATTORNEY FOR THE DEFENDANT

(*See* Doc. 121-14 at 7).

Third, the government introduced a document reflecting a probation violation after Mr. Brown was sentenced. (Doc. 121-18). On August 8, 2018, the Dekalb County Superior Court found that Mr. Brown had "[t]ested positive for THC" and "failed to attend weekly AA meetings." (Doc. 121-18). Mr. Brown's probation was reinstated. (*Id.*). In response, the defense elicited testimony from ADA Brooks confirming that if a defendant later violates probation while serving a Georgia First Offender sentence, the judge is not required to revoke First Offender status. (Doc. 171 at 69:11-19). ADA Brooks also clarified that under the First Offender Act, what formally

triggers the revocation of First Offender status is the imposition of an "adjudication of guilt" (*id.* at 69:20-70:11), at which point a felony conviction is entered on the defendant's record (*id.* at 68:17-20). The probation document, however, had blanks next to the provisions indicating whether an "adjudication of guilt" was entered:

_____ **FIRST OFFENDER STATUS & SENTENCE VACATED; ADJUDICATION OF GUILT ENTERED;**

(*See* Doc. 121-18). Thus, the defense argued, Mr. Brown's subjective belief that he was under First Offender status was affirmatively reinforced and supported by this later probation violation document. (*See* Doc. 172 at 63:11-13).

### 4.    The excluded August 3, 2023, telephone call.

At the heart of the first issue on appeal is a recorded jail call, excluded from trial, where Mr. Brown made statements concerning his belief that he was a First Offender. That jail call occurred on August 3, 2023 (Doc. 167 at 42:10-11), the same day Mr. Brown was arraigned in the instant federal case and had an attorney appointed to represent him (Docs. 6, 8).

The jail call included a discussion of the instant indictment:

MR. BROWN: They picking up all of 'em—well, not all of 'em.  I don't know why the fuck they just picked my shit up, but they trying to say—remember, remember I had took first offender? Remember when they had pulled me over in your car and I got caught with that little dope and shit?

UNKNOWN FEMALE: Yeah.

14

MR. BROWN: Alright, I took first offender for that shit in 2017, so that shit expired.  I took three years; right?

UNKNOWN FEMALE: Yeah.

MR. BROWN: So in 2020 that shit expired.  So, that shit supposed to been closed, you know what I'm sayin', so I caught this case in 2021.  So, they trying to say I was a convicted felon, you know what I'm saying and caught the gun charge?  That what the feds trying to say.  But my thing is I took first offender and I completed first offender, you know what people saying.  So, I ain't—I ain't no—I—technically I'm not a convicted felon, you know what I'm saying?

. . .

MR. BROWN: Right, right.  I took first offender then and I was— them three years was over with in 2020.  In 2021 that shit was over with, on probation.  When I first got locked up for these new charges that I bonded out on, the probation officer closed. Remember, I called him when I first got locked up and he said your—he say your case closed, you know what I'm saying?  If I was still on probation, they would have violated me and I wouldn't have been able to bond out.

UNKNOWN FEMALE: Right.

MR. BROWN: Yeah. That shit, that shit closed. It's done and over with.

(*See* Doc. 172 at 89:2-9).

The defense moved to introduce the August 3, 2023 statement.[4] (Doc. 170 at 268:21-24). The defense argued that the statement was not hearsay,

---

[4] In pretrial litigation, the government had sought to introduce at trial the contents of an October 30, 2023, jail call which they believed contained an

because they were not being offered for the truth of the statement that Mr. Brown actually was a First Offender (*id.* at 272:15-24), but instead to show "what he knew or understood" at the time (Doc. 171 at 115:7-9). In doing so, the defense relied on the binding, former Fifth Circuit's decision in *United States v. Parry*, 649 F.2d 292, 295 (5th Cir. 1981), where the criminal defendant's own out-of-court, exculpatory statement was admitted because it was not hearsay. (Doc. 170 at 273:9-275:4). Even if the statements were hearsay, the defense argued that they fell under the hearsay exception for then-existing mental condition under Rule 803(3). (*Id.* at 272:25-273:1). Still, the defense later emphasized, it was relying primarily on the fact that the statements were not hearsay to begin with (under Rule 801). (Doc. 171 at 110:22-111:10). The defense also agreed to a jury limiting instruction that would order the jury to only consider the statement for the permissible purpose. (Doc. 170 at 275:2-4; Doc. 171 at 124:5-11).

---

inculpatory statement about Mr. Brown's knowledge of felony status. (Doc. 167 at 42:8-9). In response, Mr. Brown argued that if the October 30 call were admitted, he should be allowed to introduce this August 3 call, pursuant to Fed. R. Evid. 106. (*Id.* at 40:23-41:8). The district court then ruled that the October 30, 2023, call was admissible, but if the government introduced it, then the August 3, 2023, call was admissible as well under Rule 106. (*Id.* at 47:17-19). During trial, the government indicated that it would not introduce the October 23, 2023, statements. (Doc. 170 at 268:19-20). Accordingly, Mr. Brown moved to admit the August 3 call as described.

16

The government argued that the August 3 call was inadmissible hearsay. (Doc. 170 at 270:7-13). The government argued that under Eleventh Circuit precedent, the defense's attempt to introduce an "exculpatory statement at the time of arrest without subjecting the defendant to cross-examination is 'precisely what is forbidden by the hearsay rule.'" (Doc. 170 at 270:18-124 (quoting *United States v. Willis*, 759 F.2d 1386 (11th Cir. 1985))). The government also relied on *United States v. Cunningham*, 194 F.3d 1186 (11th Cir. 1999). (Doc. 171 at 120:14-17). The government argued that a limiting instruction would be confusing to the jury, such that the call should be excluded under Rule 403. (*Id.* at 121:16-19). Finally, the government proffered a "the very clear policy argument behind this": "If I was a defendant, I would sit and make jail calls all day every day and talk about how innocent I am and how I don't believe this. I didn't know it was cocaine. I don't know this. I don't know that." (Doc. 171 at 122:19-23).

In reply, defense counsel asserted that the government's arguments went to weight rather than admissibility and that the government was free to make those arguments to the jury. (Doc. 171 at 123:23-124:4). The defense argued that the government's arguments regarding limiting instructions were contradicted by the government's own request for limiting instructions regarding other evidence. (*Id.* at 124:5-22).

### 5. The district court's ruling on the August 3, 2023, telephone call

17

Based on the assumption that Mr. Brown would not testify at trial, the district court excluded the August 3, 2023 telephone call. (*See* Doc. 171 at 129:1-131:22). The district court said this was "a trickier issue than I first thought," and saw "some ambiguity or conflict between [*Parry*] on that point and the *Willis* case." (*Id.* at 118:15-17). The district court observed that "the discussion in *Willis* is quite perfunctory" and that it was unable to "quite determine exactly what is being referred to in that case" despite "read[ing] the paragraph five times." (*Id.* at 118:18-23).

Ultimately, the district court believed that "[t]he Eleventh Circuit has held that a defendant may not introduce his own exculpatory statement without subjecting himself to cross-examination." (Doc. 171 at 130:2-6). It found that "the directive in [*United States v. Vernon*, 593 Fed. Appx. 883 (11th Cir. Nov. 21, 2014)], *Cunningham* and *Willis* as stated quite plainly, and I simply don't consider that I am able to disregard that directive to adopt the position advocated by Mr. Brown in terms of the limited purpose for which the testimony would be admitted. I'm bound by the precedent whether I would prefer that particular precedent or not." (*Id.* at 130:18-25). The district court did not independently assess the persuasiveness of *Vernon*, the unpublished decision cited. The district court distinguished *Parry*, the case relied upon by the defense, by noting that while *Parry* admitted the defendant's out-of-court statements, the defendant testified at his trial, contrary to what Mr. Brown intended to do. (*Id.* at 131:1-6).

18

The district court's ruling did not dispute that the statements were not offered for the truth of the matter asserted. The district court also did not cite the text of any Federal Rule of Evidence. After surveying the above cases, the district court added that it was "moved" by "the government's policy argument":

> In assessing hearsay matters, I'm supposed to consider at bottom the question of the trustworthiness of the out-of-court statement, and I am moved here by the government's policy argument about the purpose of the hearsay rule, which is to safeguard against out-of-court statements that may not be reliable when coming into court. And I do think that there is a floodgate problem that could result here from a rule to the contrary.

(Doc. 171 at 131:7-14). It concluded, "I do issue the ruling with some humility and recognition that the appellate court may see it differently." (*Id.* at 131:19-22).[5]

---

[5] The district court also said, "There is also a relevance problem in addition to the hearsay problem. What Mr. Brown may have understood at the time of the call that occurred in August 2023 is not necessarily probative to what he understood in April of 2021." (Doc. 171 at 131:15-18). But when the defense asked for clarification, the district court said, "I mean, I think the primary basis for my ruling was not the relevance issue that was raised. I— it is a factor but the primary basis for my ruling as the cases that I cited and their interpretation—and their direction as to what I think I'm bound to do here." (*Id.* at 133:13-17). The district court had previously found, in the context of the Rule 106 ruling, that the August 3, 2023, call "is relevant to Mr. Brown's existing mental state and to what he believed at the time." (Doc. 167 at 47:9-12).

The defense preserved an objection. (*See* Doc. 171 at 131:25-132:24). The defense reiterated that the statements were not hearsay to begin with because they were "not being offered for the truth of the matter asserted." (*Id.* at 132:9-12). The defense argued, "the mere fact that [a statement] is exculpatory does not convert something that is not hearsay into something that should be governed by rules against hearsay." (*Id.* at 132:7-12). The defense also argued that "public policy arguments should not be part of the hearsay analysis. Hearsay is either—a statement is either or is not hearsay. It either is or is not governed by the hearsay rules and that does not rest on [concerns] about public policy or floodgate[s]." (*Id.* at 132:18-24).

### 6.    The jury's questions about Mr. Brown's knowledge

After closing argument, the jury deliberated for about half a day. (*See* Doc. 172 at 83:9-10; 107:5-6 (jury deliberating from 11:39 a.m. to 4:58 p.m.)). During the deliberations, the jury asked the following questions all at once (the numbering was done by the jurors themselves):

1. Was the defendant eligible for the First Offender Act?

2. Was there multiple previous convictions that eliminated the defendant from the First Offender Act?

2A. Under possession of a firearm by a convicted felon, 18 U.S.C. 922(g)1, please define "knew" in number 3.[6] "The "defendant" "knew" he had previously been."

---

[6] "Number 3" was in reference to an earlier jury instruction that defined the elements. (*See* Doc. 172 at 28:8-10 ("And, three, at the time the defendant possessed the firearm, the defendant knew he had previously been convicted of a felony.")).

20

2B. Under that same law, if you previously initially at a point in time thought one way but later changed your mind, does it count as affirmative "knowing" since he knew previously?

2C. Is the onus of responsibility for the Court to deliver the knowledge and the defendant then to be aware of his status or does the defendant have no responsibility of understanding his status, if he receives later conflicting information?

(Doc. 172 at 95:7-96:1). The district court directed the jury to the jury instructions, except for Question 2A, to which the Court responded: "To know is to have an awareness or understanding of a fact or circumstance; a state of mind in which a person has no substantial doubt about the existence of a fact. (Black's Law Dictionary)." (Doc. 111 at 3). The jury deliberated further and issued a verdict of guilty. (Doc. 172 at 107:24-108:1).

## 7.    Sentencing

The district court later sentenced Mr. Brown to serve 86 months of imprisonment. (Doc. 149). The applicable Guidelines section was § 2K2.1. (Doc. 173 at 55:6-12). In its sentencing memo, the defense agreed that, under the Guidelines, Mr. Brown should receive a 2-point enhancement under § 2K2.1(b)(4)(A), which applies if the firearm "was stolen." (Doc. 144 at 25). The defense also agreed that under Eleventh Circuit caselaw, there is no *mens rea* requirement, i.e., the defendant does not need to know that the firearm was stolen in order for the 2-point enhancement to apply. (*Id.*) Accordingly, the defense agreed that the Guidelines required a 2-point enhancement even though there was no evidence that Mr. Brown knew the firearm was stolen. (*Id.*).

21

However, defense counsel argued that the district court had the discretion, under 18 U.S.C. § 3553, to "vary from the Guidelines based solely on its judgment that the policies behind the guidelines are wrong." (Doc. 144 at 24-25 (citing *United States v. Irey*, 612 F.3d 1160, 1212 (11th Cir. 2010) (en banc) (citing *Kimbrough v. United States*, 552 U.S. 85 (2007))). The defense argued that it was "unjust and illogical" for the enhancement to apply to Mr. Brown because "[n]othing in the record establishes how [Mr. Brown] acquired the firearm, who he acquired it from, whether he purchased it or received it as a gift, what was communicated to [him] about the firearm, or when the transaction happened." (Doc. 144 at 27). The defense also pointed out that there was no empirical support provided by the Sentencing Commission to support this enhancement. (*Id.* at 28-29). Accordingly, the defense argued that the district court should vary downward by two levels. (*Id.* at 30; *see also* Doc. 173 at 92:24-93:5 (repeating argument at sentencing)).

When the district court pronounced its sentence, the only portion of its explanation that appeared to respond to the above argument consisted of the following words: "I respectfully decline to vary on the basis of the stolen firearm enhancement . . . I understand the argument, but the Eleventh Circuit has repeatedly considered [the] issue[] and found – and declined to accept the argument that the defense has made in this case with

22

respect to [the] issue[]." (Doc. 173 at 118:24-119:5).[7] After the district court finished pronouncing the sentence, the defense objected, as relevant here: "We object to the Court's declining to vary downward from the stolen gun guideline enhancement because the Eleventh Circuit has not held that you cannot vary downward pursuant to 3553." (*Id.* at 127:19-22). After this objection was made, the district court did not address the issue.

8.    **Motions for a judgment of acquittal under the Second Amendment**

This brief separately addresses the motions for a judgment of acquittal that were litigated in parallel to the above proceedings, filed pursuant to Rule 29 of the Federal Rules of Criminal Procedure. After the government rested its case at trial, the defense moved for a judgment of acquittal under Rule 29, arguing that the Second Amendment required Mr. Brown's acquittal. (Doc. 171 at 135:21-140:1). The district court denied the motion. (*Id.* at 143:21). After the defense rested its case the next day, the defense renewed its Rule 29 motion. (Doc. 172 at 22:5-7). The district court again denied the motion. (*Id.* at 22:15-16). After the trial was over, the defense filed a written post-verdict motion for a judgment of acquittal pursuant to Rule 29, arguing that 18 U.S.C. § 922(g)(1) was unconstitutional "on its face or as applied to Mr. Brown" under the Second Amendment. (*See* Doc. 118 at 1). The government did not file an opposition brief. The

---

[7] The text removed by the ellipses referred to another argument under 18 U.S.C. § 3553(a) that the defense had made, arguing that Mr. Brown should not be punished for going to trial. That is not at issue in this appeal.

district court denied the motion. (Doc. 141). The district court held that the Second Amendment challenge was foreclosed by *United States v. Rozier*, 598 F.3d 768 (11th Cir. 2010). (Doc. 141 at 8).

## C.    Standard of Review

This Court "review[s] evidentiary rulings for an abuse of discretion." *United States v. Williams*, 865 F.3d 1328, 1337 (11th Cir. 2017) (citation omitted). However, "[b]asing an evidentiary ruling on a legal error constitutes an abuse of discretion *per se*." *Id.*

This Court reviews a district court's sentence for an abuse of discretion. *See Gall v. United States*, 552 U.S. 38, 51 (2007). A "procedural error" is an abuse of discretion, "such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range." *Id.*

This Court reviews denials of motions for a judgment of acquittal *de novo*. *See United States v. Martin*, 803 F.3d 581, 587 (11th Cir. 2015).

24

**SUMMARY OF THE ARGUMENT**

1. The defense sought to introduce Mr. Brown's August 3, 2023, statements not for the truth of the matter asserted, but to reflect Mr. Brown's subjective belief that he was a First Offender. In excluding these statements, the district court wrongly believed that it had to categorically exclude any out-of-court, non-hearsay statements made by criminal defendants who choose not to testify. But in *United States v. Parry*, 649 F.2d 292, 295 (5th Cir. 1981),[8] this Court admitted a defendant's out-of-court, non-hearsay statement and never suggested that it was relevant whether the defendant testified or not. Furthermore, no text in the Federal Rule of Evidence targets non-testifying criminal defendants in this manner, and the district court pointed to none. Accordingly, the court abused its discretion *per se* by excluding it. The conviction should therefore be reversed.

2. The district court procedurally erred at sentencing by failing to appreciate that it had the discretion to vary downward based on a policy disagreement with the Guidelines, as *Kimbrough v. United States*, 552 U.S. 85 (2007) expressly allows. Specifically, the district court believed that the Eleventh Circuit prevented it from doing so. But that is incorrect. *See United States v. Irey*, 612 F.3d 1160, 1212 (11th Cir. 2010) (en banc) ("*Kimbrough* allows a district court to vary from the guidelines based solely on its

---

[8] The decision was issued on June 29, 1981, so it constitutes binding precedent in the Eleventh Circuit. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981).

judgment that the policies behind the guidelines are wrong."). The sentence should thus be vacated.

3. Mr. Brown should prevail in his Second Amendment challenge. The district court erred in believing that Mr. Brown's challenge was foreclosed by *United States v. Rozier*, 598 F.3d 768 (11th Cir. 2010), because *Rozier* has been undermined to the point of abrogation by *N.Y. State Rifle & Pistol Assoc., Inc. v. Bruen*, 597 U.S. 1 (2022) and *United States v. Rahimi*, 602 U.S. 680 (2024). While *Rozier*'s Second Amendment test ignores both text and history, both *Bruen* and *Rahimi* later held that the Second Amendment's text and the history of firearms regulations are essential to resolving a Second Amendment challenge. Under the Supreme Court's new test, the government has the burden of putting forward historical evidence justifying the challenged firearms restriction. But in the below proceedings, the government failed to put forward any historical evidence at all. Accordingly, Mr. Brown should have been acquitted.

## ARGUMENT AND CITATION OF AUTHORITY

I.    **Mr. Brown's Conviction Should be Reversed Because the District Court Incorrectly Believed that All Out-Of-Court Statements by a Non-Testifying Criminal Defendant Must be Excluded.**

As discussed below, the district court's exclusion of the August 3, 2023, statements was based on a misunderstanding of law, thus constituting an abuse of discretion *per se*. Nothing in this Court's precedents or the Federal Rules of Evidence says that otherwise admissible out-of-court statements (e.g., non-hearsay statements) suddenly become inadmissible when the declarant happens to be a non-testifying criminal-defendant. Accordingly, Mr. Brown's conviction should be reversed and the case remanded for a new trial.

As a starting matter, the August 3, 2023, statements, which reflected Mr. Brown's ongoing subjective belief that he was a First Offender, were admissible. First, this evidence was relevant because it tended to make it more probable that Mr. Brown also subjectively believed, at the time of the offense in April 2021, that he was a First Offender rather than a convicted felon. *See* Fed. R. Evid. (hereinafter "Rule") 401. This is particularly relevant when considered together with the evidence of his subjective belief of First Offender status in November 2017. Second, these out-of-court statements were not hearsay, because they were not offered to prove the truth of the matter asserted, i.e., that he was, in fact, a First Offender. *See* Rule 801(c). Instead, they were offered to prove Mr. Brown's subjective state of mind. (*See, e.g.*, Doc. 172 at 89:20-21 ("technically I'm not a

27

convicted felon, you know what I'm saying?")). For that same reason, even if these statements were hearsay, they would have fallen under Rule 803(3)'s hearsay exception, which allows hearsay evidence offered to prove one's then-existing state of mind.[9] Thus, admitting those statements should have been straightforward, along with a limiting instruction directing that the statement only be considered as reflecting Mr. Brown's subjective beliefs, and not for the truth of the matter asserted.

However, the district court excluded the August 3, 2023, statements because of its belief that "[t]he Eleventh Circuit has held that a defendant may not introduce his own exculpatory statement without subjecting himself to cross-examination." (Doc. 171 at 130:2-4). But as explained below, there is no special non-testifying-criminal-defendant exception to the rules of admissibility, and binding precedent points in the opposite direction. Because this was a legal error, the district court *per se* abused its discretion. *See United States v. Williams*, 865 F.3d 1328, 1337 (11th Cir. 2017)

---

[9] Rule 803(3) does not apply to "a statement of memory or belief to prove the fact remembered or believed." However, the defense did not seek to use the August 3, 2023, statement to prove that Mr. Brown was, in fact, a First Offender. Even the district court correctly recognized this. (Doc. 171 at 120:18-23 ("*Cunningham*[, a case relied upon by the government,] fails to note that 803-3 explicitly excludes ' a statement of belief to prove the fact believed.' So I do think that that kind of distinguishes it from along the lines of what [defense counsel] is suggesting."). Instead, his statement reflected his "then-existing state of mind," which is his subjective view that he was not a First Offender. In any event, Mr. Brown's principal argument has always been that the statements are not hearsay to begin with.

28

("Basing an evidentiary ruling on an error of law is an abuse of discretion *per se*" (citation omitted)).

### A.    *United States v. Parry* demonstrates that the statements should have been admitted with a limiting instruction.

The former Fifth Circuit's binding decision in *United States v. Parry*, 649 F.2d 292 (5th Cir. 1981) provides the roadmap to reversal in this case. This Court held that "[u]sing an out-of-court utterance as circumstantial evidence of the declarant's knowledge of the existence of some fact, rather than as testimonial evidence of the truth of the matter asserted, does not offend the hearsay rule." *Parry*, 649 F.2d at 295. That principle applies equally to Mr. Brown's out-of-court, non-hearsay statements. And while the defendant in *Parry* did ultimately testify, nothing in the opinion suggested that that was relevant to admissibility.

In *Parry*, the government charged the defendant with a drug distribution conspiracy and relied on the testimony of undercover officers. *Id.* at 294. The defense was that the defendant subjectively believed he was cooperating with undercover officers at the time, thus lacking the requisite intent. *Id.* As evidence, the defendant sought to introduce his own out-of-court statement to his mother before the drug transaction, in which the defendant told his mother that the person who kept calling him on the phone was an undercover narcotics agent. *Id.*

The district court excluded this evidence, but the former Fifth Circuit reversed. This Court found that "[the defendant's] out-of-court statement to his mother is simply outside the scope of the hearsay prohibition." *Parry*,

29

649 F.2d at 294. This Court quoted Rule 801(c) of the Federal Rules of Evidence, which provides, as it still does today, that hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." *Id.* So "whenever an out-of-court statement is offered for some purpose other than to prove the truth of the matter asserted, the value of the statement does not rest upon the declarant's credibility and, therefore, is not subject to attack as hearsay." *Id.* at 295. In Parry's case, the statement "was not offered to prove that the caller was a narcotics agent, but to establish that [the defendant] had knowledge of the agent's identity when he spoke." *Id.* at 295. Accordingly, it was admissible. *Id.*

Like in *Parry*, Mr. Brown's defense at trial was based on his subjective belief: in Mr. Brown's case, his belief that he was a First Offender at the time of the offense. Mr. Brown then sought to "[use] an out-of-court utterance as circumstantial evidence of the declarant's knowledge of the existence of some fact"—that is, his August 3, 2023, statements as circumstantial evidence of his knowledge back at the time of the offense. *Parry*, 649 F.2d at 295. Mr. Brown was not offering his August 3, 2023, statements as proof of the matter asserted—i.e., that he actually was a First Offender. So for the same reasons set forth in *Parry*, admitting the August 3, 2023, statements "does not offend the hearsay rule." *Parry*, 649 F.2d at 295.

30

The government below worried that it would be "confusing and misleading to the jury" if the jury were given a limiting instruction that the statement "is not for the truth of the matter but instead to show his then existing state of mind." (Doc. 171 at 121:16-19). However, the government raised the exact same concern over 40 years ago in *Parry*, worrying that "the jury could improperly use the out-of-court statement as an assertion to be believed." *Parry*, 640 F.2d at 295. This Court responded, "[w]here evidence is admissible for one purpose but not for another, the accepted practice is to admit the evidence with instructions that the jury consider the evidence only for the permissible purpose." *Id.* Thus, the district court "should admit the statement and give a limiting instruction that the statement is admissible only as circumstantial evidence of Parry's knowledge and not as evidence of the truth of the matter asserted." *Id.* The same time-honored rule applies here. The district court could have addressed the government's concern with the limiting instruction that the defense proposed.

Lastly, as noted above, the district court believed that *Parry* was inapplicable because the defendant in that case ended up testifying, whereas Mr. Brown did not. (Doc. 171 at 131:1-3). But nothing in *Parry* suggests that its holding hinged on whether the defendant testified or not. Its core holding makes no mention of it. *See Parry*, 649 F.2d at 295 ("Using an out-of-court utterance as circumstantial evidence of the declarant's knowledge of the existence of some fact, rather than as testimonial

31

evidence of the truth of the matter asserted, does not offend the hearsay rule.").

### B. Subsequent Eleventh Circuit precedent did not create a non-testifying-criminal-defendant exception to the Federal Rules of Evidence.

Both the government and the district court relied on two published Eleventh Circuit decisions: *United States v. Willis*, 759 F.2d 1486 (11th Cir. 1985) and *United States v. Cunningham*, 194 F.3d 1186 (11th Cir. 1999). *Willis* held, in a single paragraph, that the out-of-court statement by the defendant was hearsay. *Willis* said, "the defense sought to place [the defendant's] remarks before the jury without subjecting [him] to cross examination. This is precisely what is forbidden by the hearsay rule." *Willis*, 759 F.2d at 1501. *Cunningham* summarized *Willis* as holding that "a defendant cannot attempt to introduce an exculpatory statement made at the time of his arrest without subjecting himself to cross-examination." *Cunningham*, 194 F.3d at 1199. Before the district court, the government plucked these isolated lines from *Willis* and *Cunningham* out of context to argue that criminal defendants are categorically barred from ever introducing out-of-court, "exculpatory" statements while retaining their right to remain silent. (Doc. 170 at 270:18-271:5; Doc. 171 at 121:6-10). The district court appeared to agree, believing that "[t]he Eleventh Circuit has held that a defendant may not introduce his own exculpatory statement without subjecting himself to cross-examination" and repeating the above quote from *Willis*. (Doc. 171 at 130:2-12).

32

The district court misread this precedent. Read in context, both *Willis*'s and *Cunningham*'s statements are plainly intended to summarize one *purpose* of the hearsay rule. Neither case purports to change the definition of "hearsay" under Rule 801 (nor could they). After all, both decisions add, "This is precisely what is forbidden *by the hearsay rule*." *Willis*, 759 F.2d at 1501 (emphasis added); *Cunningham*, 194 F.3d at 1199 (emphasis added). Indeed, months after Mr. Brown's trial, this Court issued a decision clarifying *Cunningham* (and *Willis*, which *Cunningham* summarized) as follows: "In *Cunningham*, we held that a defendant 'cannot attempt to introduce an exculpatory statement made at the time of his arrest without subjecting himself to cross-examination' *because the hearsay rule forbids that attempt*." *United States v. Macrina*, 109 F.4th 1341, 1348 (11th Cir. 2024) (quoting *Cunningham*, emphasis added). This Court specifically saw fit to add the phrase, "because the hearsay rule forbids that attempt" to the same language from *Cunningham* that the government cites. This confirms that *Cunningham*'s statement was simply illustrating a purpose of the hearsay rule. The district court did not have the benefit of this Court's clarification in *Macrina* at the time it made its ruling. In sum, nothing in *Willis* or *Cunningham* purports to change the ordinary operation of the hearsay rules under Rule 801.

Moreover, when *Cunningham*'s fleeting use of the word "exculpatory" is properly read in this context, it is clear that *Cunningham* was referring only to exculpatory *hearsay* statements banned by the Federal

Rules of Evidence, not exculpatory *non-hearsay* statements. Nor could the holdings of *Willis* or *Cunningham* be artificially stretched to cover exculpatory non-hearsay statements, since non-hearsay statements were not involved in either case. *See Finn v. Cobb Cnty. Bd. of Elec. and Registration*, 111 F.4th 1312, 1317-18 (11th Cir. 2024) ("As we've said many times, the holding of a case comprises both the result of the case and those portions of the opinion necessary to that result." (cleaned up, citing numerous cases)). Neither decision created a non-testifying-criminal-defendant exception to the admissibility of non-hearsay statements.

So at the end of the day, we come back to where we should have been all along: the text of the Federal Rules of Evidence. Specifically, does "the hearsay rule," i.e., Rule 801, "forbid" Mr. Brown's attempt to introduce the out-of-court statements? *Macrina*, 109 F.4th at 1347; *see also, e.g., id.* (relying on the text of the Federal Rules of Evidence to explain how the district court misread *Cunningham* in an overbroad manner). The answer is no: the out-of-court statement is not "hearsay" under Rule 801, since it was not offered for the truth of the matter asserted. *See, e.g., United States v. Arbolaez*, 450 F.3d 1283, 1290 (11th Cir. 2006) (citing *Cunningham*, then straightforwardly holding that an out-of-court statement was admissible because it was not hearsay under Rule 801(c)). Thus, it is admissible.

But even if *Willis* or *Cunningham* could be reasonably construed as creating a new Federal Rule of Evidence specifically targeting non-testifying criminal defendants—and they cannot—Mr. Brown would still

34

prevail on appeal. That is because such an interpretation would directly collide with the earlier decision in *Parry*, which expressly admitted a defendant's out-of-court, exculpatory statement, without considering the relevance of whether the defendant testified or not. When two precedents collide in such a manner, the prior panel precedent rule requires that the older case take priority. *See Huggins v. Leueder, Larkin & Hunter, LLC*, 39 F.4th 1342, 1347 (11th Cir. 2022) ("when prior panel precedents conflict, we follow the earlier precedent—not the later."). Accordingly, *Parry* (and the plain text of Rule 801) is the proper guide in this case. *See Parry*, 649 F.2d at 295 ("Using an out-of-court utterance as circumstantial evidence of the declarant's knowledge of the existence of some fact, rather than as testimonial evidence of the truth of the matter asserted, does not offend the hearsay rule.").[10]

### C.   Nothing in the text of the Federal Rules of Evidence supports the district court's ruling.

Perhaps most importantly, not a single Federal Rule of Evidence creates a special admissibility exception specifically for non-testifying criminal defendants. The absence of textual support is alone enough to

---

[10] In addition, even if *Willis* or *Cunningham* created such a rule, Mr. Brown's statement would not fall within its exclusionary umbrella because it was not made "at the time of [Mr. Brown's] arrest," which occurred on April 24, 2021. (Doc. 170 at 45:12-13). Of course, such a hyper-technical argument only illustrates the unreasonableness of reading *Willis*'s or *Cunningham*'s isolated statements as creating a sweeping, new, standalone rule targeting non-testifying criminal defendants.

reverse the district court, but there are even more textual clues that buttress this conclusion.

First, Congress knows how to create carveouts in the Federal Rules of Evidence specifically for criminal defendants when it wants to, and it knows how to address situations in which criminal defendants are or are not subject to cross-examination. For example, Rule 104(c) requires courts to conduct hearings on preliminary questions if, among other things, "a defendant in a criminal case is a witness and so requests." Rule 104(d) specifically addresses cross-examinations of criminal defendants. *See* Rule 104(d) ("By testifying on a preliminary question, *a defendant in a criminal case does not become subject to cross-examinatio*n on other issues in the case." (emphasis added)). And Rule 609(a)(1) has different standards for the admission of prior convictions in criminal cases depending on whether the witness is a defendant or not. *See* Rule 609(a)(1)(A) (applying Rule 403 standard in a criminal case "in which the witness is not a defendant"); Rule 609(a)(1)(B) (applying different standard in a criminal case "in which the witness is a defendant").

Congress has even included multiple detailed provisions in the rules governing hearsay exceptions that specifically refer to criminal cases and creates carveouts depending on whether the party using the evidence is the prosecutor or the criminal defendant. *See, e.g.*, Rule 803(8)(A)(ii) (carving out exception to the public records hearsay exception "in a criminal case" concerning "a matter observed by law-enforcement personnel"); Rule

36

803(8)(A)(iii) (allowing public records hearsay exception when used

"against the government in a criminal case"); Rule 803(10)(B) (specifying

disclosure requirements solely "in a criminal case" when evidence is being

used by the "prosecutor"); Rule 803(22)(D) (applying hearsay exception but

only "when offered by the prosecutor in a criminal case"); Rule 804(b)(3)(B)

(creating hearsay exception when certain conditions apply but only "if

offered in a criminal case").

There is an avalanche of other examples in the Federal Rules of

Evidence where Congress tailored specific Rules, or carved out exceptions,

solely for criminal cases, sometimes applying only to one party in a

criminal case, and sometimes even applying rules to criminal cases

involving specific subject matters.[11] Indeed, the prefatory Rule listing

---

[11] *See* Rule 201(f) (prescribing different jury instructions for judicially
noticed facts "[i]n a criminal case"); Rule 404(a)(2) ("The following
exceptions [to the prohibition on using propensity evidence apply in a
criminal case:"); Rule 408(a)(2) (certain evidence inadmissible "except
when offered in a criminal case" and other conditions apply); Rule 408(b)
(creating another exception for "proving an effort to obstruct a criminal
investigation or prosecution"); Rule 410 ("The court may admit a statement
[otherwise prohibited in] Rule 410(a)(3) or (4) . . . in a criminal proceeding
for perjury or false statement" under additional specified conditions); Rule
412(b) ("The court may admit the following evidence in a criminal case
[involving alleged sexual misconduct]"); Rule 413(a) ("In a criminal case in
which a defendant is accused of a sexual assault, the court may admit
evidence that the defendant committed any other sexual assault."); Rule
414(a) ("In a criminal case in which a defendant is accused of child
molestation, the court may admit evidence that the defendant committed
any other child molestation [notwithstanding Rule 404(a)]."); Rule 609(a)
(creating separate admissibility rules "in a criminal case" depending on

37

relevant definitions expressly contemplates that there may be different rules for criminal proceedings. *See* Rule 101(b)(2) ("In these rules . . . 'criminal case' includes a criminal proceeding.").

Congress is clearly capable of drafting any number of detailed rules that apply specifically to criminal proceedings, or parts of criminal proceedings. Thus, Congress is surely capable of defining inadmissible "hearsay" to include all out-of-court statements by a non-testifying criminal defendant regardless of whether they were offered for the truth of the matter asserted. But Congress did not do so. *See United States v. Frediani*, 790 F.3d 1196, 1201 (11th Cir. 2015) ("The text of the statute is clear, and whether the policy leads to good outcomes has no bearing on our decision. 'If judges disagree with Congress's choice, we are perfectly entitled to say so—in lectures, in law review articles, and even in dicta. But we are not entitled to replace the statute Congress enacted with an alternative of our own design.'" (citation omitted)); Antonin Scalia & Bryan

---

whether "the witness is a defendant"); Rule 609(b) (juvenile adjudication admissible only if, along with other conditions, "it is offered in a criminal case"); Rule 612(b) ("Unless 18 U.S.C. § 3500 provides otherwise in a criminal case . . ."); Rule 612(c) ("if the prosecution does not comply in a criminal case, the court must strike the witness's testimony"); Rule 704(b) ("**Exception.** In a criminal case, an expert witness must not state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense."); *see also* Rule 501 (providing default privilege rule but noting that "in a civil case, state law governs"); Rule 601 (providing default competency rule but noting that "in a civil case, state law governs").

38

A. Garner, *Reading Law: The Interpretation of Legal Texts* 352-54 (2012) (rejecting consequentialism as a basis for statutory interpretation). This Court should not do so in Congress's stead.

Second, the text of the Rules shows that Congress is aware of the possibility that out-of-court statements might be admissible when the declarant is not available for cross-examination—the scenario the government is so concerned about. For example, Rule 806 specifically provides that out-of-court statements may be impeached by "the declarant's inconsistent statement or conduct, regardless of when it occurred or whether the declarant had an opportunity to explain or deny it." Rule 106 was recently amended to clarify that if a statement is introduced, the adverse party may introduce statements or parts of statements that "in fairness ought to be considered at the same time" even if such additions constitute "hearsay." This amendment appeared to have been made to rebut the belief, adopted by some courts, that Rule 106 should never allow in hearsay by criminal defendants under Rule 106. *See* Fed. R. Evid. 106 Advisory Committee Notes, 2023 Amendments. Now Rule 106 does allow it, even if the criminal defendant does not testify. These provisions prove that if Congress were specifically concerned with admitting out-of-court, non-hearsay statements made by a criminal defendant who does not testify at trial—the "policy" concern urged by the government and adopted by the district court—Congress has the drafting tools available to address it. But Congress did not do so.

Third, and most obviously, a court's policy concerns have no place in textual interpretation. Tellingly, before the district court, the government had to "retreat[] to the usual redoubt of failing statutory interpretation arguments: an unadorned appeal to public policy." *Ysleta Del Sur Pueblo v. Texas*, 142 S. Ct. 1929, 1943 (2022). (*See* Doc. 171 at 122:19-21 (government advocating "the very clear policy argument behind this")). Even more telling was the district court's reliance on the fact that it was "moved" by "the government's policy argument." (*Id.* at 131:9-12). But however tempting it is to fill in the perceived policy gaps that one believes the Federal Rules of Evidence have left open, it is not for courts to do so.

The district court also expressed its policy view that there is something inherently untrustworthy about Mr. Brown's jail calls and that it should thus construe the hearsay rules to exclude them. (*See* Doc. 171 at 131:7-14 ("In assessing hearsay matters, I'm supposed to consider at bottom the question of the trustworthiness of the out-of-court statement . . . .")). But that is incorrect. Congress already knows how to explicitly authorize district courts to conduct preliminary "trustworthiness" assessments of certain out-of-court statements before they are admitted. *See, e.g.*, Rule 803(6)(E), 803(7)(C), 803(8)(B) (specifically using the term "trustworthiness"). Yet no such "trustworthiness" provisions exist with respect to Rule 801's definition of "hearsay" or with respect to the hearsay exception of Rule 803(3). Such trustworthiness issues are entrusted, as they usually are, to the jury. *See United States v. Calderon*, 127 F.3d 1314, 1325

40

(11th Cir. 1997) ("It is well established that credibility determinations are the exclusive province of the jury." (cleaned up)). Not the judge.

Because Mr. Brown's statement should have been admitted pursuant to the Federal Rules of Evidence, Mr. Brown's conviction should be reversed.

**II. The District Court Procedurally Erred at Sentencing by Failing to Appreciate Its Discretion to Vary Downward Under *Kimbrough*.**

At sentencing, the district court committed procedural error when it failed to appreciate that it had the discretion, under *Kimbrough v. United States*, 552 U.S. 85 (2007), to vary downward based on a policy disagreement with the Guidelines. In *Kimbrough*, the Supreme Court confirmed that "as a general matter, courts may vary from Guidelines ranges based solely on policy considerations, including disagreements with the Guidelines." 552 U.S. at 101 (cleaned up); *see also United States v. Irey*, 612 F.3d 1160, 1212 (11th Cir. 2010) (en banc) ("*Kimbrough* allows a district court to vary from the guidelines based solely on its judgment that the policies behind the guidelines are wrong."). Here, the defense asked the district court to vary downward based on its policy disagreement with Section 2K2.1(b)(4)(A) ("the stolen firearm enhancement") as it applied to Mr. Brown's case. (*See* Doc. 144 at 25-30 (noting it was "unjust" and "illogical" to enhance the sentence when there was no evidence that Mr. Brown knew the gun was stolen or how he acquired it)).

However, in the only part of its sentencing explanation that appeared to address this argument, the district court said, "I respectfully decline to

vary on the basis of the stolen firearm enhancement . . . . I understand the argument, but the Eleventh Circuit has repeatedly considered [the] issue[] and found—and declined to accept the argument that the defense has made in this case with respect to [the] issue[]." (Doc. 173 at 118:24-119:5). The only reason the district court provided for not varying downward was its belief that "the Eleventh Circuit has repeatedly considered the issue." But the Eleventh Circuit has not held that district courts cannot vary downward based on a policy disagreement with the Guidelines' stolen firearm enhancement. That would be directly contradictory to *Kimbrough* and its progeny. *See, e.g.*, *Irey*, 612 F.3d at 1212. Nor did the Eleventh Circuit require all district courts to agree with the policy behind the Guidelines' stolen firearm enhancement, which would also run afoul of *Kimbrough*, not to mention the principle that district judges have individualized discretion in sentencing. Accordingly, the defense objected, "We object to the Court's declining to vary downward from the stolen gun guideline enhancement because the Eleventh Circuit has not held that you cannot vary downward pursuant to § 3553." (Doc. 173 at 127:19-22). Yet the district court still did not correct the error.

Because the district court failed to appreciate that it had the discretion under *Kimbrough* to vary downward based on a policy disagreement with the Guidelines' application, the district court committed procedural error. Mr. Brown's sentence should thus be vacated. *See, e.g.*, *United States v. Tutty*, 612 F.3d 128, 131 (2d Cir. 2010) ("The district court

42

committed procedural error when it concluded that it could not consider a broad policy-based challenge" to specific Guidelines); *United States v. Stone*, 575 F.3d 83, 89 (1st Cir. 2009) ("a district court makes a procedural error when it fails to recognize its discretion to vary from the guideline range based on a categorical policy disagreement with a guideline"); *United States v. Henderson*, 649 F.3d 955, 964 (9th Cir. 2011) ("a district court commits procedural error when it fails to appreciate its *Kimbrough* discretion to vary from the child pornography guidelines based on a categorical policy disagreement with them.").

### III.    Section 922(g)(1) is Unconstitutional Both Facially and As Applied to Mr. Brown.

Lastly, the district court erred by denying Mr. Brown's motions under Rule 29 for a judgment of acquittal based on the Second Amendment. Section922(g)(1) of title 18 of the United States Code is unconstitutional both facially and as applied to Mr. Brown. Contrary to the district court's ruling, *United States v. Rozier*, 598 F.3d 768 (11th Cir. 2010), which upheld § 922(g)(1) against a Second Amendment challenge, did not remain good law. Under the prior panel precedent rule, a prior panel's holding "is binding on all subsequent panels unless and until it is overruled or undermined to the point of abrogation by the Supreme Court or by this court sitting *en banc*." *United States v. Jackson*, 55 F.4th 846, 856 (11th Cir. 2022). A prior panel decision has been undermined to the point of abrogation by the Supreme Court when "the Supreme Court has clearly set forth a new standard." *United States v. Archer*, 531 F.3d 1347, 1352 (11th

43

Cir. 2008). Prior panel decisions have also been abrogated when "[t]here is no way to reconcile our holding" with "the Supreme Court's holdings" or their "rationale." *United States v. DiFalco*, 837 F.3d 1207, 1218 (11th Cir. 2016). Here, *Rozier* has been undermined to the point of abrogation by two subsequent Supreme Court cases, *N.Y. State Rifle & Pistol Assoc., Inc. v. Bruen*, 597 U.S. 1 (2022) and *United States v. Rahimi*, 602 U.S. 680 (2022) and *United States v. Rahimi*, 144 S. Ct. 1889 (2024).

First, both *Bruen* and *Rahimi* have "clearly set forth a new standard." *Bruen* established a new two-part test that did not exist at the time *Rozier* was decided. Specifically, under step one of *Bruen*'s analysis, "when the Second Amendment's plain text covers an individuals' conduct, the Constitution presumptively protects that conduct." *Bruen*, 597 U.S. at 17. Under step two, the burden is then on the "government" to "demonstrate that the regulation is consistent with the Nation's historical tradition of firearm regulation." *Id.* (emphasis added). *Rahimi* went on to apply that standard, also recognizing that the government "bears the burden" to "justify its regulation." *Rahimi*, 602 U.S. at 691.

Second, there is no way to "reconcile" *Rozier*'s Second Amendment test with the two-part test established by *Bruen*. Step one of *Bruen* requires an examination of the Second Amendment's plain text. But *Rozier* did not look at the text of the Second Amendment. Step two of *Bruen* requires examining whether the government has put forward relevant historical evidence of "firearm regulation." But *Rozier* ignored firearm regulation

44

history, instead examining the history of *other*, non-Second-Amendment constitutional rights. *See Rozier*, 598 F.3d at 771 n. 5. In sum, *Rozier*'s *ad hoc* application of the Second Amendment is unrecognizable in light of the formal steps created by *Bruen* and *Rahimi*.

Third, *Rozier* leaned on language from *District of Columbia v. Heller*, 554 U.S. 570 (2008) about the Second Amendment protections of "law-abiding, responsible citizens," inferring that felons are not "law-abiding, responsible citizens" and thus do not deserve Second Amendment protections. *See Rozier*, 598 F.3d at 771. But then came *Rahimi*, which expressly criticized the Fifth Circuit for unduly relying on that very same language about "responsible" citizens. *See Rahimi*, 602 U.S. at 701 ("In *Heller* and *Bruen*, we used the term 'responsible' to describe the class of ordinary citizens who undoubtedly enjoy the Second Amendment right. But those decisions did not define the term and said nothing about the status of citizens who were not 'responsible.' The question was simply not answered.").

To be sure, *Rahimi* repeated *Heller*'s statement that prohibitions "on the possession of firearms by 'felons' . . . are 'presumptively lawful.'" *Rahimi*, 602 U.S. at 699. However, then-Judge Barrett, Justice Thomas, the Fifth Circuit, and the *en banc* Third Circuit have all persuasively observed that this language from *Heller* was dicta. *See United States v. Bullock*, 679 F. Supp. 3d 501, 522-24 (S.D. Miss. 2023) (citing such opinions), *rev'd on other grounds*. The Eleventh Circuit has always drawn a clear distinction between

45

"dicta" in a decision and the actual "holding" of a case. *See United States v Kaley*, 579 F.3d 1246, 1253 n.10 (11th Cir. 2009); *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1298 (11th Cir. 2010). In any event, "presumptively" does not mean "definitely." A historical analysis is still required, and both *Bruen* and *Rahimi* make clear that it is the government's burden to provide it.

At a minimum, *Rahimi* has abrogated *Rozier* with respect to Mr. Brown's as-applied challenge to Section 922(g)(1). One thing *Rahimi* confirms is that there is a difference between facial and as-applied challenges to firearms restrictions. *See, e.g.*, *Rahimi*, 602 U.S. at 701 (describing challenge as "facial"); *see also id.* at 713 (emphasizing difference between the two) (Gorsuch, J., concurring). *Rozier* does not use the term "facial," but its analysis was categorical: none of the defendant's individual circumstances were taken into account. As district courts have persuasively recognized, *Rahimi* "turned on the necessary existence in cases under § 922(g)(8) of an *individualized finding* that the defendant posed a threat to the physical safety of another." *United States v. Morales*, 2024 WL 3345982, at *2 (S.D.N.Y. July 8, 2024) (emphasis added); *United States v. Baldon*, 2024 WL 3459017, at *1 (D. Nev. July 18, 2024) (similar); *Suarez v. Paris*, 2024 WL 3521517, at *12 (M.D. Pa. July 24, 2024) (similar). So *Rahimi* does leave open the door to as-applied challenges especially where, as here, there has never been an *individualized* finding of dangerousness against Mr. Brown, much less any finding that justifies permanent disarmament for the rest of his life. *See Rahimi*, 602 U.S. at 702 ("An individual found by a court to pose a

46

credible threat to the physical safety of another may be temporarily disarmed consistent with the Second Amendment."), 713 ("Our resolution of Mr. Rahimi's facial challenge to § 922(g)(8) necessarily leaves open the question whether the statute might be unconstitutional as applied in 'particular circumstances.'") (Gorsuch, J., concurring).[12]

Applying *Bruen*'s two-part test anew to this case, this Court can readily conclude that Mr. Brown's motion for a judgment of acquittal should have been granted. The government never disputed below that *Bruen*'s step one was satisfied: the plain language of the Second Amendment covers the prohibited conduct at issue. *See United States v. Jimenez-Shilon*, 34 F.4th 1042, 1046 (11th Cir. 2022), *abrogated on other grounds by Bruen* ("dangerous felons" are "indisputably part of 'the people.'"). As for *Bruen*'s step two, the government never even attempted to put forward historical evidence for this case, despite multiple opportunities to do so. *See Bruen*, 142 S. Ct. at 2126 (the burden is on the "government" to "demonstrate that the regulation is consistent with the Nation's historical tradition of firearm regulation."). The government submitted no historical evidence in the record at all. While the government might do so in other cases, the government did not do so in *this case*, and thus Mr. Brown should

---

[12] Should the panel rule that *Rozier* is still good law, Mr. Brown reserves his right to argue in a petition for rehearing *en banc* that *Rozier* should be overruled for the above reasons. (*See* Doc. 131 at 2; Doc. 138 at 5 (preserving argument).)

have been acquitted. *See Bruen*, 142 S. Ct. at 2130 n.6 ("in our adversarial system of adjudication, we follow the principle of party presentation. Courts are thus entitled to decide a case based on the historical record compiled by the parties.").

## CONCLUSION

Because the district court excluded critical evidence based on a rule that does not exist in the Federal Rules of Evidence, Mr. Brown's conviction should be reversed. In the alternative, Mr. Brown's sentence should be vacated because the district court procedurally erred at sentencing by failing to appreciate its discretion to vary downward. In all events, the judgment should be reversed because the government failed to carry its burden in response to Mr. Brown's facial and as-applied Second Amendment challenge.

SEAN J. YOUNG
REBECCA SHEPARD
Counsel for Damarious Brown

48

**CERTIFICATE OF COMPLIANCE AND SERVICE**

This is to certify that the foregoing brief is in compliance with Federal Rule of Appellate Procedure 32(a)(5), (6) because it has been prepared in Book Antiqua 14 point, a proportionally-spaced typeface, using the Microsoft Word 2016 word processing software. Moreover, this brief also complies with the type-volume limitation set forth in Federal Rule of Appellate Procedure 32(a)(7)(B)(i) because it includes no more than 11,455 words, according to the same software. Finally, on the date set forth below, counsel uploaded this brief to the Court's web site, which promptly served opposing counsel:

> NATASHA S. COOPER
> LAWRENCE R. SOMMERFELD
> Assistant United States Attorneys
> United States Attorney's Office
> United States Courthouse
> 75 Ted Turner Drive, SW
> Atlanta, Georgia 30303

March 21, 2025.

> SEAN J. YOUNG
> Federal Defender Program, Inc.
> 101 Marietta St., NW, Suite 1500
> Atlanta, GA 30303
> (404) 688-7530
> Sean_Young@FD.org
>
> Counsel for Damarious Brown